IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| GLADYS KNIGHT-MCDOWELL,<br><br>    Plaintiff,<br><br>v.<br><br>RIVAL GROUP, LLC, CASCADE FOODS, LLC, GRANITE FOODS, LLC, and SHANGA HANKERSON,<br><br>    Defendants. | Civil Action No.<br>1:16-cv-3160-LMM |

**FIRST AMENDED COMPLAINT FOR UNFAIR COMPETITION AND
FALSE ADVERTISING IN VIOLATION OF FEDERAL LAW**

Plaintiff Gladys Knight-McDowell (née Knight) ("Knight") brings this action to vindicate her federal intellectual property rights, to prevent further unfair competition and false advertising in violation of the federal Lanham Act, codified as amended at 15 U.S.C. §§ 1051 *et seq.* ("Lanham Act"), and to seek redress for past violations of federal intellectual property law by Defendants Rival Group, LLC ("Rival"), Cascade Foods, LLC ("Cascade"), Granite Foods, LLC ("Granite"), and Shanga Hankerson ("Hankerson") (collectively, "Defendants").

## INTRODUCTION

1. This action for injunctive relief and damages arises under federal law and stems from Defendants' continued use of Knight's name and likeness, as well as certain proprietary recipes and memorabilia, including Knight's dresses/costumes and photographs featuring Knight and other celebrities (collectively "Intellectual Property"), in connection with the operation of certain Gladys Knight Chicken and Waffles restaurants located in the metro Atlanta area (collectively the "Restaurants"). Based on Defendants' conduct, Knight asserts claims for unfair competition and false advertising in violation of the federal Lanham Act, codified as amended at 15 U.S.C. §§ 1051 *et seq.* ("Lanham Act").

## PARTIES

2. Knight is a resident and citizen of the state of Nevada.

3. Defendant Rival is a Georgia limited liability company transacting business in Georgia. Rival's principal place of business is located at 8714 Ashton Road, Jonesboro, GA, 30238. Although Rival appears to have been dissolved, it is being named in this action out of an abundance of caution and to promote the utmost certainty regarding all parties' rights and obligations.

4. Defendant Cascade is a Georgia limited liability company transacting business in Georgia. Cascade's principal place of business is located at 8714 Ashton Road, Jonesboro, GA, 30238.

5. Defendant Granite is a Georgia limited liability company transacting business in Georgia. Granite's principal place of business is located at 8714 Ashton Road, Jonesboro, GA, 30238.

6. Defendant Hankerson is a resident and citizen of the state of Georgia.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this action pursuant to under Section 39 of the Lanham Act, 15 U.S.C. § 1121, and under 28 U.S.C. §§ 1331.

8. This Court has personal jurisdiction over the Defendants because Defendants regularly transact business in the State through the operation of restaurants, the operation of which forms the basis for Knight's claims.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred and are continuing to occur in this District and in this Division.

## FACTS

**Knight's Intellectual Property and The Letter Agreement**

10. Knight, an Atlanta native, has been called "the Empress of Soul" and is among the best known American entertainers of the past half-century. She is nationally famous and has been active as a recording artist, songwriter, actress, businesswoman, humanitarian, and author since first rising to fame in the 1950's. She has been in near continuous performance over the past 60 years, is a ten-time Grammy nominee and seven-time award-winner, and is the voice of iconic songs such as "Midnight Train to Georgia," one of Rolling Stone magazine's top 500 songs of all time. The music television network VH1 ranked Knight number 18 on its list of the 100 Greatest Women of Rock, and Rolling Stone magazine included her on its list of the greatest singers of all time. Knight has been inducted in the Georgia Music Hall of Fame as well as the Rock and Roll Hall of Fame. She also has a star on the Hollywood Walk of Fame. Knight has numerous fans all across the United States, and indeed the world, as illustrated by her 296,000 Twitter followers. Knight is an Atlanta icon – *e.g.*, a portion of West Peachtree Street in Midtown was renamed in 2015 as "Gladys Knight Highway."

11. On or about March 4, 1999, Knight and her son Hankerson on behalf of his business entity Rival entered into a written agreement in which Knight granted Rival a license to use her Intellectual Property in connection with a restaurant catering to visitors to Atlanta from across the country and specializing in southern cuisine in exchange for monthly royalty payments based on Rival's annual adjusted gross revenue (the "Letter Agreement").  A true and correct copy of the Letter Agreement is attached as Exhibit A and by this reference is incorporated herein.

12. The Letter Agreement made it clear that it was "intended merely as a consent to the use of [Knight's] name and likeness.  It does not constitute an assignment of, or a grant of a license to any trademarks or service marks [Knight] now owns or later adopts." Exhibit A, ¶ 4.

13. The Letter Agreement was for a term of ten years with the possibility of one subsequent ten-year renewal upon mutual agreement of the parties.  Exhibit A, ¶ 8.  Knight had the right to terminate the Letter Agreement sooner if Hankerson ceased to be affiliated with Rival.  Exhibit A, ¶ 2.

14. This case deals with three Gladys Knight Chicken and Waffles Restaurants that were operating in the metro Atlanta area in 2016.  Rival

operated one location pursuant to the terms of the Letter Agreement before it expired after which Rival operated pursuant to an oral license from Knight. Similarly, Cascade and Granite (also owned by Hankerson) each operated a Gladys Knight Chicken and Waffles Restaurant under an oral license from Knight.

15. The Restaurants represent an important tribute to Knight's storied career. As such, the Restaurants prominently have utilized Knight's Intellectual Property in promoting the Restaurants. Knight's memorabilia appears on display throughout the Restaurants.



16. Additionally, Knight provided the inspiration for the presentation of the menu, with for example the signature and best-selling item on the menu being the "Midnight Train," a reference and tribute to Knight's hit song "Midnight Train to Georgia."



17. On March 4, 2009, the Letter Agreement expired and was not renewed.

18. After March 4, 2009, Knight continued an oral licensing arrangement with Hankerson and his business entities, including Rival, Granite, and Cascade pursuant to which they were permitted to continue using Knight's Intellectual Property in the operation of the Restaurants. This continued license was contingent, among other things, upon the goods and services provided in connection with the operation of the Restaurants being at least equivalent to those required under the Letter Agreement. The continued use was further contingent on Hankerson and his entities not

7

engaging in any intentional or reckless activity which may harm Knight's name and reputation.

**Termination of License**

19. Although Knight contemplated terminating Hankerson and his entities' license to use her Intellectual Property after 2009 due to what she perceived as mismanagement of the Restaurants, initially she decided against it.

20. Knight ultimately decided to terminate the license arrangement in 2016. At that time, she orally informed Hankerson that his and his entities' license to use her Intellectual Property, including her name and likeness, as well as her proprietary recipes and memorabilia, was terminated.

21. This termination was later memorialized in a formal letter from Knight's counsel to Hankerson, dated July 21, 2016 (the "Termination Letter"). A true and correct copy of the Termination Letter is attached as Exhibit B and by this reference is incorporated herein.

22. As it turns out, Hankerson was being investigated by the Georgia Department of Revenue, was ultimately arrested for criminal charges in connection with his alleged tax debt, and is currently out on bail.

23. Hankerson's arrest has been widely publicized, as has his connection to Knight and the Gladys Knight Chicken and Waffles Restaurants.

**Defendants' Unlawful Use of Knight's Intellectual Property**

24. Around the time Knight terminated Hankerson and his business entities' license to use her Intellectual Property, the State of Georgia initiated a civil action against Hankerson and his business entities in the Superior Court of Clayton County under the Georgia Racketeer Influenced and Corrupt Organizations Act and the Georgia Uniform Civil Forfeiture Procedure Act. *See State of Georgia ex rel. Tracy Graham Lawson, District Attorney of the Clayton Judicial Circuit v. Shanga Hankerson, et al.*, Civil Action File No. 2016-cv-02428-6 (the "Clayton County Action").

25. On July 22, 2016, a receiver was appointed in the Clayton County Action ("Receiver") with respect to the Restaurants' continued operation.

26. Although Knight has terminated Defendants' license to use her Intellectual Property, Defendants, through the Receiver, have continued to use Knight's Intellectual Property without authorization and in violation of Knight's rights under federal law.

27. On July 22, 2016, Knight demanded Defendants cease immediately the use of her Intellectual Property in connection with the operation of the Restaurants (the "Cease and Desist Letter"). A true and correct copy of the Cease and Desist Letter is attached as Exhibit C and by this reference incorporated herein. Additionally, Knight, through counsel, informed both the Special Assistant District Attorney in the Clayton County Action, and later the Receiver, that any license Defendants had to use Knight's Intellectual Property was terminated. Knight, through counsel, even provided a notarized letter to both the Special Assistant District Attorney and the Receiver in which Hankerson unambiguously renounced any ownership interest in or current license to use Knight's Intellectual Property by himself or his business entities (the "Hankerson Letter"). A true and correct copy of the Hankerson Letter is attached as Exhibit D and by this reference is incorporated herein.

28. Despite these communications, Defendants continue to use Knight's Intellectual Property in the operation and promotion of the Restaurants.

29. Those actions are unlawful because the Receiver has no rights beyond those held by Defendants. Put differently, the Receiver cannot do

what Defendants themselves lack authority to do. Defendants do not have any rights in or to Knight's Intellectual Property and therefore neither does the Receiver.

30. Knight has sought to avoid the need for legal proceedings. As mentioned above, Knight has also cooperated in providing the Receiver and Special Assistant District Attorney with (a) the Letter Agreement; (b) the letter terminating Defendants' rights; and (c) the letter in which Hankerson has renounced on behalf of all Defendants any ownership interests in Knight's Intellectual Property. *See* Exhibits A, B, D. Moreover, Hankerson's attorney has further affirmed expressly and in writing that Hankerson and his entities hold no ownership interest in Knight's Intellectual Property. *See* email correspondence from Hankerson's attorney, attached as Exhibit E.

31. The Receiver and Special Assistant District Attorney have refused to recognize Knight's Intellectual Property rights despite being provided with incontrovertible and unambiguous evidence that Defendants have no claim to that Intellectual Property. Exhibit C. They have instead maintained that Hankerson or his attorneys previously made a statement that could be construed as his having claimed a partial ownership interest in

11

the Intellectual Property. Regardless of whether Hankerson or his attorneys ever made such a statement, Hankerson has since unambiguously renounced any possible claim to Knight's Intellectual Property. Thus, Defendants' continued use of the Intellectual Property (under the auspices of the Receiver) is without legal justification and violates Knight's rights under federal law. Moreover, Defendants' continued use of Intellectual Property is damaging Knight, as explained below.

**Defendants' Ongoing Harm to Knight's Intellectual Property**

32. Since the Receiver assumed operation, the Restaurants are struggling and continue to decline. They often have insufficient food to serve patrons and a number of menu items are often unavailable. They keep irregular hours, often opening late and closing early. They have fewer employees than normal and are operated in a disorderly manner. As a result, the Restaurants' sales are and have remained depressed. One of the Restaurants closed recently.

33. The Restaurants are in freefall and their decline necessarily has the collateral effect of damaging Knight's Intellectual Property and Knight's reputation. That Defendants (and the Receiver) have failed to pay any

license fees to Knight only further highlights the unjust and unlawful nature of Defendants' continued unauthorized use of Knight's Intellectual Property.

34. Defendants' unauthorized use of Knight's Intellectual Property further damages Knight by impeding her ability to license her Intellectual Property, including for the operation of restaurants.

35. All conditions precedent for bringing this lawsuit have been performed or waived.

## COUNT I
## FEDERAL UNFAIR COMPETITION
## AND FALSE ADVERTISING (15 U.S.C. § 1125(a))

36. Knight repeats and incorporates by reference the allegations contained in the preceding paragraphs.

37. Defendants' use of Knight's Intellectual Property in promoting and operating the Restaurants violates federal law in that it constitutes a false designation of origin and a false description and representation that the Restaurants are endorsed, approved, and/or sponsored by Knight.

38. Defendants' use of Knight's Intellectual Property in promoting and operating the Restaurants is causing and is likely to continue causing confusion, deception, and mistake by creating the false and misleading impression that Defendants and/or Defendants' goods and services are

affiliated, connected, or associated with Knight or have the sponsorship, endorsement, or approval of Knight, in violation of federal law, specifically 15 U.S.C. § 1125(a).

39. Defendants' actions demonstrate an intentional, willful, and bad faith intent to trade on Knight's goodwill and to cause confusion, deception, and mistake in the minds of customers and potential customers by implying a nonexistent affiliation or relationship between Defendants and Knight, to the great and irreparable injury of Knight.

40. Defendants' unlawful acts have caused a substantial injury to the public and Knight, and Knight is entitled to permanent injunctive relief, actual and treble damages, an accounting of profits, costs, and reasonable attorneys' fees pursuant to 15 U.S.C. §§ 1125(a), 1116, and 1117.

## DEMAND FOR JURY TRIAL

41. Pursuant to Fed. R. Civ. P. 38(b), Knight demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Knight prays that:

(a) Defendants and all their agents, officers, employees, representatives, successors, assigns, attorneys, and all other persons acting for, with, by, through, or under authority from Defendants, or in concert or

participation with Defendants, be preliminarily and permanently enjoined and restrained from:

    i.    using any of Knight's Intellectual Property in connection with the promotion and operation of the Restaurants;

    ii.    engaging in any other conduct that will cause, or is likely to cause, confusion, mistake, deception, or public misunderstanding as to the affiliation, connection, association, origin, sponsorship, or approval of Defendants' services or goods with or by Knight;

    iii.    otherwise infringing upon Ms. Knight's Intellectual Property.

(b)    Defendants be compelled to return immediately all memorabilia items belonging to Knight.

(c)    Defendants be compelled immediately to de-brand, de-identify and disassociate the Restaurants such that they reflect no affiliation or association with, connection to, or endorsement by Knight.

(d)    Defendants be compelled to account to Knight for any and all profits derived by Defendants, and for all damages caused to Knight, under 15 U.S.C. §1117(a).

(e) The award of damages and/or profits resulting from Defendants' infringement, unfair competition, and false designation of origin of goods be trebled.

(f) Defendants be required to pay to Knight her reasonable litigation expenses, including the costs of this action and her reasonable attorneys' fees, in accordance with 15 U.S.C. § 1117(a).

(g) Knight be awarded prejudgment interest on her monetary awards.

(h) Defendants be required to deliver up for destruction all advertising and promotional materials, labels, cartons, brochures, business stationary, calling cards, information sheets, posters, menus, signs, and any and all other printed, graphic, or electronic materials of any type, including the plates, molds, or other means of producing the materials, which include or bear references to Knight's name or likeness.

(i) Defendants be directed to file with the Court and serve on Knight, within thirty (30) days after entry of a final injunction, a report in writing under oath setting forth in detail the manner and form in which Defendants have complied with the injunction.

(j) Knight have such other and further relief as the Court may deem just and proper.

Respectfully submitted this 29th day of August, 2016.

        /s/ Christopher P. Bussert
Christopher P. Bussert (GA Bar No. 099085)
John P. Jett (GA Bar No. 827033)
Ava J. Conger (GA Bar No. 676247)

KILPATRICK TOWNSEND
  & STOCKTON LLP
1100 Peachtree Street, NE, Suite 2800
Atlanta, Georgia 30309
(404) 815-6500 (telephone)
(404) 815-6555 (facsimile)
cbussert@kilpatricktownsend.com
jjett@kilpatricktownsend.com
aconger@kilpatricktownsend.com

*Counsel for Plaintiff*

## LOCAL RULE 7.1 CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing pleading filed with the Clerk of Court has been prepared in 13 point Century Schoolbook font in accordance with Local Rule 5.1(C).

Dated: August 29, 2016.

                                       /s/Christopher P. Bussert
                                       Christopher P. Bussert